**INDIANA FARM GAS PRODUCTION CO., INC., Appellant–Petitioner,**

v.

**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY and Office of Utility Consumer Counselor, Appellees–Respondents.**

No. 93A02–9408–EX–476.

Court of Appeals of Indiana.

March 14, 1996.

Robert L. Hartley, Jr., Timothy E. ·Hollingsworth, Mark A. Drummond, Henderson Daily Withrow & Devoe, Indianapolis, for appellant.

George A. Porch, Bamberger Foreman, Oswald & Hahn, Evansville, Daniel W. McGill, Barnes & Thornburg, Indianapolis, for Southern Indiana Gas and Electric Company.

## OPINION

SHARPNACK, Chief Judge.

Indiana Farm Gas Production Company ("IFG") appeals the decision of the Utility Regulatory Commission ("Commission") dismissing its petition to require Southern Indiana Gas and Electric Company ("SIGECO") to transport gas from IFG's well. This is the third opinion that has been written in this case. The first two are reported as *Southern Indiana Gas & Elec. Co. v. Indiana Farm Gas Prod. Co.*, 540 N.E.2d 621 (Ind.Ct.App.1989), *reh'g granted*, 549 N.E.2d 1063, *trans. denied* (hereinafter *"Farm Gas I "*) and *Southern Indiana Gas & Elec. Co. v. Indiana Farm Gas Prod. Co.*, 549 N.E.2d 1063 (Ind.Ct.App.1990) (hereinafter *"Farm Gas II "*).

IFG raises several issues for our review which we reduce to the dispositive issue of whether the Commission had jurisdiction to resolve the dispute between these parties. We affirm.

The background for this appeal is well stated in *Farm Gas I* as follows:

"IFG is an Indiana corporation with offices in Evansville. SIGECO is a public utility engaged in the business of providing gas and electricity service to the public in portions of southwestern Indiana; its main offices are in Evansville.

SIGECO purchases most of its gas from Texas Gas Transmission Corporation, an interstate pipeline. SIGECO in conducting its business owns and operates an underground storage field, named Oliver Field, in Posey County. IFG leased a tract of land, which was adjacent to Oliver Field, and commenced drilling operations for natural gas. Natural gas was found and the well was named the Travers well.

IFG entered into a contract with Indiana Farm Bureau Cooperative Association, Inc., to sell gas produced from Travers well to Farm Bureau to be used at Farm Bureau's Mt. Vernon refinery. Farm Bureau is a customer of SIGECO, and SIGECO has a pipeline running from Oliver field to Farm Bureau. IFG does not have transmission pipeline facilities for natural gas of its own.

IFG filed a petition with the Indiana Utility Regulatory Commission, pursuant to I.C. 8–1–2–87.6,[1] for an order requiring SIGECO to transport the gas from Travers well to Farm Bureau. IFG 'pre-filed' the evidence it intended to present at the hearing on the petition, pursuant to a prehearing order issued by the Commission.

SIGECO filed a motion to dismiss the petition for a want of jurisdiction since IFG failed to establish, either in the petition or in the 'pre-filed' evidence, that: 1) the gas at issue was 'Indiana produced natural gas;' or 2) IFG 'owned the gas.'

On August 12, 1987, the Commission denied the motion to dismiss. The Commission found that IFG presented a prima facie case by establishing in the pre-filed evidence that:

1) IFG was the owner of a lease to explore and extract natural gas; 2) the leasehold estate was in Indiana; 3) the well, which was drilled to extract the gas, was on the leasehold premises; 4) the gas was of pipeline quality; and 5) the transporting company, SIGECO, had adequate capacity to accept and transport the volume of gas involved. The Commission determined that proof of 1–3 was sufficient to give rise to rebuttable presumption that the gas was 'Indiana produced' and that the gas produced would be 'owned' by IFG.

The Commission based its conclusion on the assumption Indiana courts would likely apply the 'rule of capture' to storage gas, which is gas which has been previously severed from realty, but is injected into the ground for storage. Thus, IFG likely 'captured' the storage gas (assuming that the gas was storage gas) and 1–3 gave rise to a rebuttable presumption that the gas to be extracted will be 'owned' by IFG. The Commission also determined that the statute applied to both 'native gas' and 'storage gas.'

On September 1, 1987, SIGECO filed a petition for rehearing and reconsideration, or, in the alternative, to certify the legal issues to this court. On March 30, 1988, the Commission entered an order on SIGECO's petition granting in part and denying in part. The Commission granted the petition in part by determining that the statute should be applied only to 'native' gas and not 'storage' gas. The Commission denied the petition in all other respects."

*Farm Gas I,* 540 N.E.2d at 622–623 (footnote omitted).

On appeal, we first treated SIGECO's motion to dismiss as an Ind.Trial Rule 12(C) Motion for Judgment on the Pleadings. Because the Commission considered matters outside the pleadings (the "pre-filed" evidence), we then treated it as a motion for summary judgment under T.R. 56.

Agreeing with SIGECO, we reversed the Commission's order and remanded the case for an adjudication in favor of SIGECO on IFG's petition. *Id.* at 625. Specifically, we found:

"A petitioner, in a proceeding brought under this statute, has the burden of proving all essential elements. The issues of the situs of production and marketable title to the natural gas once extracted are threshold jurisdictional issues which must be proven by the petitioning party. The Commission is not authorized to answer these issues.

---

1. This statute states in part:
   "(b) Any person, corporation, or other entity engaged in the production, gathering, sale or transportation of natural gas produced in Indiana may petition the commission to:
   (1) Require a gas utility certified under section 86 or 87 of this chapter to purchase or transport Indiana produced natural gas owned by the petitioning entity; and
   (2) Set the rates for the purchase or transportation of that gas."
   I.C. § 8–1–2–87.6.

The above issues must either: 1) be without dispute; 2) have been established by agreement of the parties; or 3) have been conclusively established in a prior proceeding. Here, the petitioner could have elected to file an action for declaratory judgment in a trial court of general jurisdiction in order to determine the 'ownership' of the gas."

*Id.* Because the case required the Commission to determine whether the natural gas at issue was SIGECO's personal property or gas which was subject to being reduced to the possession and ownership of IFG, we held, "[u]ltimately this is a question of property law, which is outside the scope of delegated authority and expertise of the Commission." *Id.*

IFG filed a petition for rehearing with this court. On rehearing, we modified our decision. *Farm Gas II,* 549 N.E.2d at 1064. Specifically, we stated in part:

"After hearing oral argument we reconsider this matter, vacate portions of our previous opinion, and now remand to the Commission to proceed with a hearing on the merits.

\* \* \* \* \* \*

The dispositive issue upon rehearing is: Did this court improperly order summary judgments [sic] in favor of the moving party [SIGECO] which had not supported its motion by any affidavits or sworn testimony?

\* \* \* \* \* \*

In the original briefing of this matter SIGECO seemed to treat its motion as an Ind.Tr.R. 41(B) motion and IFG argued it as if it were an Ind.Tr.R. 12 motion. This Court decided to treat the motion as an Ind.Tr.R. 56 motion, and a review of the previous decision will explain why. We now stand by our decision that this matter should be treated as a Rule 56 motion. We do this because the Commission considered matters outside of the pleadings. Specifically, the Commission considered IFG's prefiled testimony.

In our original opinion we ordered the Commission to enter an adjudication in favor of SIGECO. We, in effect, ordered the Commission to grant summary judgment against the non-moving party, IFG, even though SIGECO had not supported its motion by affidavits or testimony as provided by Ind.Trial Rule 56(C) and (D).

The motion filed by SIGECO relied upon prefiled testimony submitted by IFG. After considering the oral arguments presented by the parties on the petition for rehearing, we find it was erroneous to rely upon the prefiled testimony as a basis for ordering judgment against IFG. The prefiled testimony was not given under oath. It may be changed or withdrawn until the witness appears at a hearing and swears that the prefiled testimony is his true testimony.

The Commission should hold a hearing upon the issues presented by IFG's petition including a determination of jurisdiction.

Therefore, we vacate the order previously entered and remand this matter back to the commission for further proceedings consistent with this revised opinion."

*Id.*

Upon remand, the Commission held an evidentiary hearing and then dismissed the case. The Commission concluded, on the authority of *Farm Gas I,* that it lacked jurisdiction over the disputed questions of property ownership upon which the resolution of the case depended. The Commission stated:

"Although the evidentiary record in the Cause is extensive, the portion of the original Court of Appeals opinion which was not vacated by the subsequent opinion on rehearing renders evaluation and weighing of this evidence unnecessary. Based on the pleadings and the evidence of record, it is clear that ownership of the gas in the Travers Well is in dispute, and that Petitioner has not conclusively established its ownership in an action for declaratory judgment in a trial court of general jurisdiction.... Based upon the evidence of record, taken together with the two Court of Appeals opinions, we find that Petitioner has failed to invoke jurisdiction pursuant to I.C. 8–1–2–87.6 and that its Petition must therefore be dismissed."

Record, pp. 648–649. IFG now appeals the Commission's dismissal.

■ We need not address the merits of IFG's arguments concerning the jurisdiction of the Commission and the applicability of the rule of capture to storage gas because we are bound by our holding in *Farm Gas I* that the Commission lacked jurisdiction through the "law of the case" doctrine. Under this doctrine, an appellate court's determination of a legal issue is binding both on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts. *Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind.1985), *reh'g denied, cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257; *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr.*, 637 N.E.2d 1306, 1316 (Ind.Ct.App.1994), *reh'g denied*. All issues decided directly or implicitly in a prior decision are binding on all subsequent portions of the case. *Certain Northeast Annexation Area Landowners v. Fort Wayne*, 622 N.E.2d 548, 549 (Ind.Ct. App.1993), *reh'g denied, trans. denied*. The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided...." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *see Landowners*, 622 N.E.2d at 549. The doctrine is "based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950), *reh'g denied*.

■ Indiana has applied this doctrine in its strictest sense and has resisted creating exceptions to the strict application of the doctrine. *See, e.g., Landowners*, 622 N.E.2d at 548; *Borgman v. Borgman*, 420 N.E.2d 1261 (Ind.Ct.App.1981); *Stoner v. Howard Sober, Inc.*, 127 Ind.App. 338, 141 N.E.2d 458 (1957); *Pittman–Rice Coal Co. v. Hansen*, 122 Ind.App. 334, 102 N.E.2d 387 (1951); *Riesbeck Drug Co. v. Wray*, 111 Ind.App. 467, 39 N.E.2d 776 (1942); *Mertz v. Wallace*, 93 Ind.App. 289, 169 N.E. 333 (1929); *Terre Haute & I.R. Co. v. Zehner*, 28 Ind.App. 229, 62 N.E. 508 (1902). In fact, Indiana courts have held numerous times that the law of the case must be followed even when the earlier decision is deemed to be incorrect. *See Landowners*, 622 N.E.2d at 549; *Cunningham v. Hiles* 439 N.E.2d 669, 676 (Ind.Ct. App.1982); *Borgman*, 420 N.E.2d at 1265; *Stickler v. Live Stock Insurance Assoc.*, 73 Ind.App. 508, 127 N.E. 831; *Terre Haute*, 62 N.E. at 508; *see also* E.H. Schopler, Annotation, *Erroneous Decision as Law of the Case on Subsequent Appellate Review*, 87 A.L.R.2d 271, 288, 296 (1963). While a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, as a general rule courts should be reluctant to do so in the absence of extraordinary circumstances. *Landowners*, 622 N.E.2d at 549.

Indiana has, however, recognized a narrow exception in cases where the initial decision was "clearly erroneous and would work a manifest injustice." *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind.1989) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983)). In *Lewis*, the supreme court refused to follow the law of the case. *Id.* The court held that a retrial of the defendant would violate double jeopardy under then current law, even though the court had found eight years earlier that a retrial would not violate double jeopardy under the old law. *Id.* The court stated:

"To retry appellee on a charge of which he was acquitted eight years ago out of blind adherence to a discretionary rule of practice—even one accorded as much deference as this one—would work precisely the kind of manifest injustice of which the [United States Supreme Court] warned. Further, this case presents precisely the sort of extraordinary circumstance of which the Court speaks, wherein it is appropriate to disregard the law of the case in favor of the prevailing rule of law."

*Id.* at 1118–1119. We note that there was a significant change in the substantive law applicable to the case that warranted the court to reject application of the law of the case.

In the present case, we find the law of the case doctrine to be applicable. In *Farm Gas I*, we specifically held that the Commission had no jurisdiction to decide the property law

issue upon which the resolution of the case depended. *Farm Gas I*, 540 N.E.2d at 625–626. Soon thereafter, we granted a rehearing and vacated portions of the original opinion on the grounds that the prefiled testimony of IFG had not yet been admitted into evidence and could not, therefore, be relied on to support a motion for summary adjudication. *Farm Gas II*, 549 N.E.2d at 1064. After remand, the Commission held an evidentiary hearing on IFG's petition. At that time, IFG's prefiled testimony was admitted into evidence without change. The Commission later dismissed IFG's petition for lack of jurisdiction.

Although *Farm Gas I* was vacated in part by *Farm Gas II*, we find that the grounds for vacating portions of the opinion were procedural in nature and had no effect on the jurisdictional analysis of the original opinion. Furthermore, we find that the facts of the case before us pertaining to the issue of the Commission's jurisdiction remain essentially the same as the facts of the first appeal. That is, ownership is still in dispute. Moreover, we find no "extraordinary circumstances", such as a change in the law or a constitutional right in jeopardy, which would cause adherence to the previous ruling to work a manifest injustice. *See Lewis*, 543 N.E.2d at 1118; *Landowners*, 622 N.E.2d at 549. Consequently, our holding in *Farm Gas I* that the Commission has no jurisdiction to determine the property law question upon which resolution of the case rests constitutes the binding law of the case.

For the foregoing reasons, we affirm the Commission's order dismissing IFG's petition for lack of jurisdiction.

AFFIRMED.

GARRARD, J. concurs.

BARTEAU, J. dissents with separate opinion.

BARTEAU, Judge, dissenting.

The law of the case doctrine precludes a lower tribunal's consideration of an issue that has been resolved by an appellate court.

*Riggs v. Burell*, 619 N.E.2d 562, 564 (Ind. 1993); *Closson Lumber Co., Inc. v. Wiseman*, 507 N.E.2d 974, 977 (Ind.1987); *Egbert v. Egbert*, 235 Ind. 405, 415, 132 N.E.2d 910, 916 (1956). To invoke the law of the case doctrine, the issues decided in the appellate court's decision "must clearly appear to be the only possible construction of the opinion. . . ." *Egbert*, 235 Ind. at 415, 132 N.E.2d at 916; *see also*, *Riggs*, 619 N.E.2d at 564; *Closson Lumber*, 507 N.E.2d at 977.

The majority determined that the Court's opinion on rehearing, *Southern Indiana Gas & Elec. Co. v. Indiana Farm Gas Prod. Co.*, 549 N.E.2d 1063 (Ind.Ct.App.1990), *trans. denied* ("*Farm Gas II*"), preserved the initial holding of *Farm Gas I*, 540 N.E.2d 621 (Ind. Ct.App.1989), that the Indiana Utility Regulatory Commission lacked jurisdiction to determine the legal question of ownership of the gas from the Travers Well. Op. at 981–82. However, one may conclude from a fair reading of *Farm Gas II* that the Court vacated its holding that the Commission lacked jurisdiction.

The *Farm Gas I* decision is divided into three sections. In Section I, the Court determined that SIGECO's motion to dismiss filed with the Commission was done under Ind.Trial Rule 56(C). 540 N.E.2d at 624. In Section II, the Court found that the Commission lacked jurisdiction to resolve the property law question of whether IFG or SIGECO owned the gas extracted through the Travers Well. And in Section III, the Court determined that there was no genuine issue of material fact, and ordered the Commission to enter an adjudication in favor of SIGECO.

On rehearing the Court vacated *"portions"* (i.e. more than one Section) of *Farm Gas I*. 549 N.E.2d at 1064 (emphasis added). *Farm Gas II* specifically preserved that part of *Farm Gas I* that determined SIGECO's motion to dismiss to actually be a T.R. 56(C) motion.[2] However, the balance of the *Farm Gas I* decision was vacated because the record was not sufficiently developed to permit summary judgment under T.R. 56(C), due to the fact that the record contained only IFG's unsworn "prefiled" evidence. "We find it

2. In *Farm Gas II* the Court stated: "We now stand by our decision that this matter should be treated as a Rule 56 motion." 549 N.E.2d at 1064.

erroneous to rely upon the prefiled testimony as a basis for ordering judgment against IFG." *Id.* The *Farm Gas II* opinion concluded with an order to the Commission to hold a hearing upon the issues presented by IFG's petition for an order to transport the gas.

All that remains of the *Farm Gas I* decision after being revised on rehearing is the determination that SIGECO's motion to dismiss is actually a motion for summary judgment under T.R. 56(C). The Court vacated the remaining portions of *Farm Gas I*, including its finding that the Commission lacked jurisdiction to resolve the question of ownership, as such was extraneous to the dispositive issue of whether summary judgment based upon prefiled evidence was inappropriate.

The majority and SIGECO disagree with this interpretation of the proceedings before the Court, and maintain that *Farm Gas II* preserved the jurisdictional ruling espoused in *Farm Gas I*. At the very least, the *Farm Gas I* decision, as revised by the *Farm Gas II* opinion, is susceptible to more than one construction. Under the well-established law espoused by our Supreme Court, this precludes application of the law of the case doctrine.

Because the law of the case doctrine should not be dispositive of this case, I also address the issues raised by IFG.

### JURISDICTION OF COMMISSION

Indiana Code section 8–1–2–87.6 (West. Supp.1995) governs the Commission's authority to order a gas utility to transport natural gas. It states:

(b) Any person, corporation, or other entity engaged in the production, gathering, sale, or transportation of natural gas produced in Indiana may petition the commission to:

(1) require a gas utility ... to purchase or transport Indiana produced natural gas owned by the petitioning entity.

I.C. § 8–1–2–87.6. SIGECO and IFG concede that I.C. section 8–1–2–87.6 requires the Commission to determine that IFG owns the gas it collects from the Travers Well before the Commission may order SIGECO to transport the gas. SIGECO contends that the Commission is not empowered to make such a finding where ownership is disputed. I do not agree.

It is well-settled that an administrative agency has the inherent authority in its broad grant of power from the legislature to regulate that which is necessary to effectuate the regulatory scheme outlined in the statute. *Northern Ind. Public Serv. Co. v. Citizens Action Coalition of Ind.*, 548 N.E.2d 153, 161 (Ind.1989). To issue an order requiring a utility to transport gas, the Commission *must* determine that the petitioner owns the gas. Thus, our legislature has given the Commission the express authority to determine ownership. And, inherent in the authority to determine ownership is the power to resolve disputes concerning ownership of the gas.

The limits of an agency's jurisdiction is dependent not upon the terms in which the parties frame the issues, but upon the relief sought. Where the legislature has expressly authorized an agency to grant a certain form of relief, the agency has the inherent authority to resolve the issues attendant to exercising that authority. In *Northern Ind. Public Serv.*, the Commission determined that its statutory authority to order a utility to issue refunds to overcharged ratepayers did not include the power to award interest. Our Supreme Court reversed, and found that the Commission's authority to award interest to overcharged ratepayers was inherent in its authority to grant a refund. "[I]t would be strange to conclude that the legislature intended that ratepayers receive part of their just due from the commission and the rest through the courts." 548 N.E.2d at 161.

To hold that the Commission must determine that IFG owns the gas produced through the Travers Well before SIGECO may be ordered to transport the gas, but that the Commission lacks the authority to resolve a dispute over ownership once SIGECO raises the challenge, reaches a similarly strange result. This rationale permits the Commission to determine ownership only when ownership need not be determined— when ownership is not in dispute. The end

result is to render the legislature's grant of power to the Commission illusory by permitting a party to strip the Commission of jurisdiction simply by raising a dispute over ownership. Surely our legislature did not intend such an absurd result.

Indiana Code section 8–1–2–87.6 mandates that the Commission determine that a petitioner owns the gas for which it seeks an order to transport. This express statutory authority empowers the Commission to resolve disputes of ownership between parties, and includes the inherent power to resolve issues attendant to the dispute. The Commission has jurisdiction to determine whether IFG owns the gas extracted through the Travers Well.

### RULE OF CAPTURE

The Court in *Farm Gas I* also found that the Commission lacked jurisdiction because the Commission exceeded its statutory authority by creating new law in derogation of the Rule of Capture and establishing a presumption in favor of ownership of natural gas extracted through a well on one's leasehold. 540 N.E.2d at 624–25. However, in finding IFG made a prima facie showing of ownership and denying SIGECO's motion to dismiss IFG's petition, the Commission did not create new law, and actually *declined* to establish new law, by refusing to recognize SIGECO's proffered exception to Indiana's well-established Rule of Capture.

The parties concede that the Rule of Capture has long been the law in Indiana. Underground oil and gas, which are fluid by nature and may roam across the property boundaries of landowners, become the property of one who raises the gas to the surface and severs it from the earth. *See Manufacturer's Gas & Oil Co. v. Indiana Natural Gas & Oil Co.,* 155 Ind. 461, 57 N.E. 912 (1900); *Foertsch v. Schaus,* 477 N.E.2d 566 (Ind.Ct.App.1985), *trans. denied.*

> [T]he lessor, as owner of the fee, owns all of the oil beneath the surface of his acreage. But, because of the fugitive nature of oil, which can flow from and to adjoining lands, the lessor owns the oil only in a qualified sense. Absent an oil and gas lease, the landowner has the right to ex-

plore and drill for oil on his land and any such oil produced is thereby reduced to his personal property, even if it flows from adjoining lands.

477 N.E.2d at 570. In this case, IFG held a valid oil and gas lease and had the right to explore and drill for natural gas within its leasehold. IFG sunk its own well on its own land and extracted natural gas from below. SIGECO does not contest this fact.

SIGECO argues, and asks the Court to recognize an exception to the Rule of Capture to protect an owner of a natural gas storage field which is near or adjacent to property on which another drills for natural gas. SIGECO posits that the Rule of Capture only applies to native gas, and does not include storage gas, and its position is not without support. *See White v. New York State Nat. Gas Corp.,* 190 F.Supp. 342 (W.D.Penn.1960); *Lone Star Gas Co. v. Murchison,* 353 S.W.2d 870 (Tex.Civ.App.1962); *Bezzi v. Hocker,* 370 F.2d 533 (10th Cir. 1966); *Ellis v. Arkansas Louisiana Gas Co,* 450 F.Supp. 412 (E.D.Okla.1978), *aff'd* 609 F.2d 436 (10th Cir.1979), *cert. denied* 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); *Texas American Energy Corp. v. Citizens Fidelity Bank & Trust Co.,* 736 S.W.2d 25 (Ky.1987).

Notwithstanding the above authority, I am persuaded by the recent decision of the Kansas Supreme Court in *Union Gas Sys., Inc. v. Carnahan,* 245 Kan. 80, 774 P.2d 962 (1989). Like the case at bar, *Union Gas* dealt with a landowner who operated a natural gas well adjacent to a utility's gas storage field. The utility brought an action under a Kansas statute that permits a utility to condemn the area beneath an adjacent owner's property so it could use the area as storage space. The utility also sought an accounting of the storage gas the adjacent property owner had extracted through the well. The Kansas Supreme Court held that because the utility failed to exercise its right of condemnation, the Rule of Capture applied to the gas the property owner previously extracted through his well. Only after moving to condemn the adjacent property, and providing the property owner with just compensation, could the utility preclude the property owner

from gaining possession of the gas beneath his land.

Similarly, I.C. sections 32–11–4, *et seq.*, grant SIGECO the power to exercise eminent domain to secure IFG's gas leasehold as storage space. SIGECO has not acted to condemn IFG's leasehold and has not offered to compensate IFG for the fair value of the storage space. Instead, SIGECO suggests that we preclude application of the Rule of Capture and find that IFG does not own the natural gas it extracts from its well. The end result is to deny IFG the value of the natural gas in its leasehold, whether it be native or storage gas, as well as the value of its land as a storage field. Such a result is unconscionable.

Indiana statutes give SIGECO the means and tools necessary to protect its ownership of the natural gas it pumps into its storage field, but SIGECO has failed to act in its own interest and condemn IFG's leasehold. Instead, SIGECO asks that we carve an exception into the well-settled Rule of Capture so that it may secure ownership of the gas in its storage field, deny IFG the benefit of the natural gas under IFG's property, and gain the use of IFG's leasehold as storage space without being made to pay IFG the fair value of the use of its property.

IFG rightfully operates the Travers Well on its leasehold and extracts the natural gas from the reservoir beneath the surface. Under the Rule of Capture, IFG gains ownership of the gas when it severs the gas from the earth. And, because IFG's well and leasehold is within the State of Indiana, it follows that the gas produced through the Travers Well is Indiana produced natural gas.[3] I would reverse the Commission's order dismissing IFG's petition for lack of jurisdiction, and remand the cause to the Commission for a determination of the remaining issues: whether the gas produced through the Travers Well is of pipeline quality and reliability, and whether the facility to which the gas is to be delivered has adequate capacity to accept and transport the volume of gas involved.[4]

I respectfully DISSENT.

3. SIGECO argues that the gas produced by the Travers Well is not "natural gas produced in Indiana" as required in I.C. section 8–1–2–87.6 because the gas in its storage field was purchased from Louisiana. This argument lacks merit. First, it ignores the fact that the Travers Well extracts native gas from IFG's gas reservoir as well as storage gas from SIGECO'S storage field. Second, the rationale behind the Rule of Capture is that gas that roams freely under the property of multiple landowners is not exclusively owned by any one landowner. IFG reduces the gas to its exclusive ownership when it brings it to the surface through its well, and thus IFG's labors and efforts produce the gas.

4. Indiana Code section 8–1–2–87.6 requires the Commission to make this determination before it may issue an order to transport the natural gas. The Commission made no findings on these issues.