Katherine HUMPHREYS, in her official capacity as Secretary of the Indiana Family and Social Services Administration and Indiana Family and Social Services Administration, Appellants–Defendants,

v.

Petricia DAY, et al., Appellees–Plaintiffs.

No. 49A02–0001–CV–30.

Court of Appeals of Indiana.

Sept. 29, 2000.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy

Attorney General, Indianapolis, Indiana, Attorneys for Appellants.

Jacquelyn E. Bowie, Kenneth J. Falk, Indianapolis, Indiana, Attorneys for Appellees.

**OPINION**

RATLIFF, Senior Judge

*STATEMENT OF THE CASE*

Appellants–Defendants Katherine Humphreys, in her official capacity as Secretary of Indiana Family and Social Services Administration and the Indiana Family and Social Services Administration, (collectively "FSSA") appeal from the trial court's order denying their motion for summary judgment and granting Appellees–Plaintiffs Petricia Day's ("Day"), *et al.*, motion for summary judgment in a matter involving Medicaid disability benefits.

We affirm.

*ISSUES*

Day raises the following issue for our review: whether the doctrine of law of the case is applicable here upon review of the trial court's ruling.

FSSA raises the following issue for our review which we restate as: whether an individual whose medical condition will improve with treatment, but who cannot afford to pay for treatment, is disabled for purposes of Medicaid eligibility in Indiana.

*FACTS AND PROCEDURAL HISTORY*

The facts are not in dispute and may be summarized by quoting from an opinion of our supreme court in this matter:

The named plaintiff in this class action, Petricia Day, is a 55–year–old former nurse's aid suffering from a severe degenerative condition of her right knee. She was told by her orthopedic specialist that she needed total knee replacement surgery, which she could not afford.

Day applied for assistance under Indiana's Medicaid program. Under the

statute in effect at the time, Medicaid would be provided to needy persons who had "a physical or mental impairment, disease, or loss that ... appears reasonably certain to continue throughout the lifetime of the individual without significant improvement ..." Ind.Code Ann. § 12–14–15–1(2) (West 1994) (eligibility for Supplemental Assistance for Persons with Disabilities); Ind.Code Ann. § 12–15–2–3 (West 1994) (persons receiving such assistance are eligible for Medicaid). An administrative law judge ("ALJ") denied Day's application on the basis that her condition was not reasonably certain to continue for the remainder of her lifetime because it was treatable by surgery. FSSA affirmed the ALJ's determination.

Day filed a petition for judicial review combined with a class action complaint against the defendants seeking reversal of FSSA's determination and requesting declaratory and injunctive relief for persons similarly situated. The parties agreed to certification of the following class of plaintiffs:

All individuals in Indiana who have had or will have applications for benefits under Ind.Code § 12–14–15 denied ... based on the state agency's determination that they are not disabled because their conditions are treatable and therefore ... not 'reasonably certain to continue throughout the lifetime of the individual without significant improvement,' although they are unable to afford the treatment that may lead to improvement of their conditions.

* * *

On cross motions for summary judgment, the trial court determined that under the then current statutes and regulations a treatable disabling condition is reasonably certain to continue throughout the lifetime of the individual without significant improvement if the individual cannot afford treatment. The trial court, therefore, entered findings of fact,

conclusions of law, and judgment in favor of the plaintiffs. After the trial court modified the scope of FSSA's obligation to notify class members, FSSA initiated this appeal by filing a timely praecipe. Shortly thereafter, the Indiana legislature added the following to the definition of disability in Ind.Code § 12–13–15–1(2): "The determination of medical disability under this subsection shall be made without reference to the individual's ability to pay for treatment." 1995 Ind. Acts 152 § 4.

*Sullivan v. Day*, 681 N.E.2d 713, 715–716 (Ind.1997).

When this matter first came to this court on appeal, we considered Day's argument that Medicaid applicants with treatable conditions who are unable to afford the treatment which will cure or alleviate their conditions are not excluded by the regulatory language, because their conditions are expected to continue indefinitely. We also considered FSSA's argument that nothing in the regulation contradicted FSSA's policy of refusing to consider an applicant's ability to pay for treatment in concluding that an applicant whose condition is treatable does not meet the disability requirement. After careful review, we came to the conclusion that since both sides presented plausible readings and interpretations of the current statutes and regulations, Day had not shown that FSSA's reading and interpretation was erroneous. Therefore, the trial court did not err by deferring to FSSA's interpretation, since FSSA was the agency charged with interpreting the statute and regulation. We held that FSSA, under the then current statutory and regulatory scheme, was not required to take into account an applicant's inability to pay for treatment and to determine that an applicant is entitled to Medicaid benefits for an otherwise treatable condition. This portion of our opinion was expressly adopted by reference by our supreme court. *See Sullivan v. Day*, 681 N.E.2d 713, 716 (Ind.1997).

However, in our opinion we also arrived at the conclusion that the current eligibility criteria were more restrictive than those in place on January 1, 1972, because the eligibility scheme in 1972 contemplated that applicants with treatable conditions could qualify for medical services. We held that on January 1, 1972, the state was required to provide medical treatment to persons who met the eligibility criteria including the requirements that they lacked sufficient income or other resources to provide a reasonable subsistence compatible with decency and health, and that they had an impairment, disease or loss which appeared reasonably certain to continue throughout their lifetime, including those whose disabling conditions, though not likely to improve without treatment, were nonetheless treatable. We further held that because the 1972 requirements were less restrictive than those currently in place, the state was in violation of federal law.

This portion of our opinion was not expressly adopted by the supreme court when transfer was granted. However, that issue was not decided by our supreme court. Rather, our supreme court found that because the parties did not have the opportunity to brief or make a record as to the rules and regulations in effect in 1972 or the actual practice of FSSA's predecessor agency in 1972, that the matter should be remanded to provide the parties with the opportunity to do so, as this was the basis for our decision of the issue. *Sullivan v. Day*, 681 N.E.2d 713, 717 (Ind. 1997). The supreme court noted that while our conclusion was logical, the supreme court could not yet agree or disagree with our conclusion without briefing from the parties. *Id.*

On remand, both sides engaged in discovery and both sides moved for summary judgment. The trial court granted summary judgment in favor of the plaintiffs on December 3, 1999. The trial court permanently enjoined FSSA from denying disability benefits to individuals solely be-

cause the individuals have disabling conditions that might improve with treatment. FSSA brought this appeal.

## DISCUSSION AND DECISION
### LAW OF THE CASE DOCTRINE

 Under the law of the case doctrine, an appellate court's determination of a legal issue is binding both on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts. *Indiana Farm Gas Production v. Southern Ind. Gas & Elec. Co.*, 662 N.E.2d 977, 981 (Ind.Ct.App.1996). All issues decided directly or implicitly in a prior decision are binding on all subsequent portions of the case. *Id.* The doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided. *Id.* The doctrine is based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter. *Id.*

 Day argues that we have already decided the issues being appealed; therefore, we are bound by our earlier decision in *Sullivan v. Day*, 661 N.E.2d 848 (Ind. Ct.App.1996). Day cites to *Indiana Farm Gas*, for the proposition that because the ground for vacating a portion of an opinion is procedural in nature it has no effect on the analysis of the original opinion and constitutes the binding law of the case. 662 N.E.2d at 982. Day contends (1) that because the supreme court remanded the matter to the trial court for submission of evidence, development of the record and consideration, (2) that because statutory interpretation is a question of law for the court to decide, and (3) because the record before us now includes the same statutes and regulations which were before this court and interpreted in the earlier appeal, that our prior opinion should be the law of the case. We disagree.

Ind. Appellate Rule 11(B)(3) provides as follows:

The opinion or memorandum decision of the Court of Appeals shall be final except where a petition to transfer has been granted by the Supreme Court. If transfer be granted, the judgment and opinion or memorandum decision of the Court of Appeals shall thereupon be vacated and held for naught, except as to any portion thereof which is expressly adopted and incorporated by reference by the Supreme Court, and further, except where summarily affirmed by the Supreme Court ...

We agree with FSSA that the procedural posture of this case differs to such a degree that *Indiana Farm Gas*, does not apply. In *Indiana Farm Gas*, this court vacated portions of one of our own previously written opinions. We held that because the reasons for vacating the opinion were those of procedure, there was no effect on the analysis used in the original opinion. 662 N.E.2d at 982. Here, however, the supreme court vacated our opinion after expressly adopting only a portion of that opinion. Therefore, we find the rule to be applicable and that the previous opinion is not the law of the case because it is a nullity. *See Meyer v. Biedron*, 667 N.E.2d 752, 752–53 (Ind.1996).

### MEDICAID ELIGIBILITY REQUIREMENTS IN 1972

In *Indiana Department of Public Welfare v. Payne*, 622 N.E.2d 461, 464 (Ind. 1993), our supreme court noted that in 1972, Congress restructured Medicaid by replacing three of four welfare programs with a new federal program entitled Supplemental Security Income for the Aged, Blind, and Disabled ("SSI"), 42 U.S.C. § 1381 *et seq.* (Supp.1974). For many states, the number of potentially eligible Medicaid recipients significantly increased under this new federal program. Members of Congress were concerned that some states might cease participation in Medicaid if the states were obligated to bear the increased costs of providing benefits to everyone eligible for SSI. As a result of that concern, Congress offered

states the option of providing Medicaid assistance only to those individuals who would have been eligible under the state's Medicaid plan in effect on January 1, 1972. *See* 42 U.S.C. § 1396a(f) (Supp. 1974) (commonly known as the "Section 209(b) option"). Under Section 209(b) a state could keep its 1972 Medicaid eligibility requirements, but could not implement requirements more restrictive than its 1972 provisions or more liberal than the SSI requirements. Indiana elected to continue participation in Medicaid under Section 209(b). *See* Ind.Code § 12–15–2–6.

■ In order to determine what the disability requirement was on January 1, 1972, we must examine the total method by which services were provided to individuals with disabilities. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura*, 465 N.E.2d 215, 218 (Ind.Ct.App.1984).

Ind.Code 12–1–7–29 (1971), ("Section 29"), made the following provision:

Assistance shall be given under the provisions of this act to any needy disabled person hereinafter referred to as "disabled person" who:

(a) has a physical or mental impairment, disease, or loss which is verifiable by a physician possessing an unlimited license to practice medicine in this state and which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement, and which substantially impairs his ability to perform labor or services or to engage in a useful occupation.

When this matter previously was before us, we concluded, and the supreme court agreed, that the current version of the above language and regulations did not contradict FSSA's interpretation that a person is not disabled for purposes of Medicaid eligibility, if the individual's condition may be remedied by treatment even if the person cannot afford that treatment. *Sullivan v. Day*, 681 N.E.2d 713, 716 (Ind. 1997). Now that the parties have had the opportunity to make a record below and brief the issue for us, we are left to determine if this language had the same meaning in 1972 when placed in the context of the total method in place in 1972.

■ In construing a statutory provision, a statute must be considered as a whole, each part examined not in isolation but with reference to all the other companion provisions. *Indiana Department of Public Welfare v. Payne*, 622 N.E.2d at 466. We will construe an individual provision so as to harmonize it with other sections of the enactment. *Id.*

Ind.Code § 12–1–7–44 ("Section 44"), which was later repealed, was in effect in 1972. Section 44 provided as follows:

Assistance under the provision of this act may be denied or discontinued to any disabled person who refuses medical, surgical, or other treatment, when his disability may be partially or wholly restored by such treatment and the extent of his dependency would thereby be lessened. A certificate in writing as to treatment and possible restoration shall be made by the examining licensed physician, and the plan of treatment approved by the state supervising physician in the state department.

In our attempt to harmonize Sections 29 and 44 as they applied in 1972 we are led to several conclusions. First, the criteria listed in Section 29 serve to define who is a "disabled person." Second, because a "disabled person," under Section 44 can refuse treatment, the Section 29 definition of "disabled person" must include individuals whose disabilities were treatable. Third, the statutes refer to "disabled persons as defined by this act." Clearly then, "disabled person" did not refer to individuals with any type of disability as FSSA argues. Rather, "disabled person" was a term of art used to describe individuals

who met the eligibility criteria for Medicaid purposes.

When the 1972 versions of Sections 29 and 44 are read together, it is logical to construe them to mean that a disabled person is a person who has a physical or mental impairment, disease, or loss ... which appears reasonably certain to continue throughout his or her lifetime without significant improvement unless treated. A person, whose condition is treatable, but whose condition goes untreated, will continue to suffer from that disabling condition as will a person whose condition is untreatable. Therefore, the logical conclusion to draw from the existence of the language contained in Sections 29 and 44 is that in 1972 the definition of disability included conditions that were disabling, yet treatable.

■ FSSA further argues that the trial court's judgment eliminates the durational element of the statutory definition of disability. We disagree. An individual who is disabled for purposes of Section 29 is entitled to monthly assistance payments unless, under Section 44, he or she refuses the treatment. Therefore, if an individual accepted the treatment and his or her condition improved significantly, the individual might no longer qualify for assistance. Likewise, an individual who refused treatment would not receive further assistance because of that refusal. Consequently, those individuals continuing to receive assistance would be those whose conditions were likely to continue throughout their lifetime without significant improvement. Those who suffer from a disabling condition that could be treated, but do not receive the treatment because of an inability to pay for the treatment are disabled for purposes of Medicaid eligibility.

On January 1, 1972, the state was required to provide medical treatment to individuals who qualified under Section 29. Included among those individuals were those who lacked sufficient income or other resources to provide a reasonable subsistence compatible with decency and

health. *See* Ind.Code § 12–1–7–29(e) (1971). Those individuals must have had an impairment, disease or loss which appeared reasonably certain to continue throughout their lifetime, including those conditions which were treatable. We find that this eligibility requirement is less restrictive than the one currently employed by FSSA. Because the 1972 eligibility requirement is less restrictive, we find that the state is in violation of Section 209(b).

### CONCLUSION

■ We hold that FSSA's current interpretation of the definition of disability for purposes of Medicaid assistance is more restrictive than the eligibility requirement which existed on January 1, 1972. Today, under current statutes, an applicant is not disabled if his condition can be remedied with treatment, regardless of ability to afford the treatment. In January 1, 1972, the eligibility requirement included disabling conditions that were treatable. Therefore, a person who suffers from a disabling condition that can be treated, but remains untreated due to the person's inability to pay for the treatment renders that person disabled. FSSA is in violation of Section 209(b) by applying a more restrictive eligibility requirement than was imposed in January of 1972. The trial court correctly entered summary judgment in favor of Day.

Affirmed.

RILEY, J., and BAKER, J., concur.