RILEY, Judge,
dissenting.
I respectfully disagree with the majority’s opinion to affirm the trial court’s order to make G.W. available for a forensic interview at Susie’s Place in Bloomington. In reaching its decision, the majority equates the DOS’s request for a forensic interview of a child who is not the subject of an abuse investigation with the statutory requirement that the DOS’s assessment must include “[t]he names and conditions of other children in the home.” I.C. § 31-33-8-7(a)(3) (emphasis added). Specifically, the opinion interprets “condition” as encompassing the possibility to subject the other children in the home to an invasive forensic interview.
The majority commences its analysis with the premise that DOS’s argument arises out of a concern for G.W.’s ‘condition.’ However, DOS’s appellate argument contradicts its clear intentions as evidenced by its words and actions during the trial court proceedings. At no point during the proceedings before the trial court did the DCS ever refer to its concern for G.W.’s ‘condition’; rather, repeating a constant theme, the DCS hammered on its right to forensieally interview G.W. and Mother’s refusal thereof. DCS was overtly confident of its authority, to the point that it had scheduled G.W.’s interview at Susie’s Place to take place two days after the trial court’s hearing. To be sure, DOS’s request is more invasive than a mere kitchen table conversation to assess G.W.’s condition in her home and in the presence of her parents. Instead, as conceded by DOS’s family case manager, a *388 forensic interview entails G.W. being taken from her parents and subjected to an examination by a certified forensic interviewer while several DCS employees and law enforcement agents watch from another room. It is my opinion that DCS lacks the statutory authority to conduct a forensic interview of a non-subject child residing in the home.
It is worth repeating that Ind. Code § 31-83-8-7 addresses the scope of assessment by the DCS and provides, in pertinent part:
(a) The department’s assessment, to the extent that is reasonably possible, must include the following:
(1) The nature, extent, and cause of the known or suspected child abuse or neglect.
(2) The identity of the person allegedly responsible for the child abuse or neglect.
(3) The names and conditions of other children in the home.
(4) An evaluation of the parent, guardian, custodian or person responsible for the care of the child.
(5) The home environment and the relationship of the child to the parent, guardian, or custodian or other persons responsible for the child’s care.
(6) All other data considered pertinent.
(b) The assessment may include the following:
(1) A visit to the child’s home.
(2) An interview with the subject child.
(3) A physical, psychological, or psychiatric examination of any child in the home.
(c) If:
(1) admission to the home, the school, or any other place that the child may be; or
(2) permission of the parent, guardian, custodian, or other persons responsible for the child for the physical, psychological, or psychiatric examination;
under subsection (b) cannot be obtained, the juvenile court, upon good cause shown, shall follow the procedures under [I.C. § ] 31-32-12.
(d) If a custodial parent, a guardian, or a custodian of a child refuses to allow the department to interview the child after the caseworker has attempted to obtain the consent of the custodial parent, guardian, or custodian to interview the child, the department may petition a court to order the custodial parent, guardian, or custodian to make the child available to be interviewed by the caseworker.
(e) If the court finds that:
(1) a custodial parent, a guardian, or a custodian has been informed of the hearing on a petition described under subsection (d); and
(2) the department has made reasonable and unsuccessful efforts to obtain the consent of the custodial parent, guardian, or custodian to interview the child;
the court shall specify in the order the efforts the department made to obtain the consent of the custodial parent, guardian, or custodian and may grant the motion to interview the child, either with or without the custodial parent, guardian, or custodian being present.
Both parties acknowledge and I agree that the use of the word “child” or “subject child” within the statute references the child who is the focus of the DCS investigation, ie., G.W.’s sister. As such, the only provision applicable to G.W. resides with I.C. § 31 — 33—8—7(b)(3) which specifies that the DCS may conduct an examination *389 of any child in the home. However, because Mother refused to consent to the forensic interview, the procedures pursuant to I.C. § 31-32-12 had to be followed. See I.C. § 31 — 33—8—7(c)(2). Therefore, in the absence of parental consent, the trial court could only order an examination upon certification by a physician that an emergency existed. See I.C. § 31-32-12. No certification was filed in the instant case.
Although the majority initially appears to accept the statutory distinction between “child” and “other children in the home,” it nevertheless then muddles the interpretation of the statute by erasing this distinction in its application of subsection (d). By finding that a child in subsection (d) encompasses the subject child AND the other children in the home, the majority effectively makes subsection (b) of the statute obsolete. See Humphreys v. Day, 735 N.E.2d 837, 842 (Ind.Ct.App.2000), tram, denied (Statute must be interpreted as a whole and in reference to all the other companion provisions.). In my interpretation, subsection (d) merely clarifies subsection (b)(2) — interview with the SUBJECT child — and allows the DCS to request judicial intervention to interview children who are presumed victims of abuse or neglect. Although the majority invokes its “common sense” in interpreting the statute, in essence, it just presented the DCS with a broad enlargement of its authority by effectively erasing the safeguards our Legislature granted to “other children in the home.” See Op. p. 386. I refuse to subscribe to the majority’s interpretation of “common sense.”
My interpretation is in line with the substantial interests implicated in the case before us. Our courts have recognized on several occasions that the parent-child relationship is one of the most valued relationships in our culture. In re D.L.M., 725 N.E.2d 981, 983 (Ind.Ct.App.2000). In particular, an action involving a parent’s interest in the care, custody, and control of his children pertains to “perhaps the oldest of the fundamental liberty interests” recognized by the United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Accordingly, a parent’s interest in the accuracy and justice of the decision is a commanding one. Lassiter v. Dep’t of Social Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Although the State has a significant parens patriae interest in protecting the welfare of the child by intervening in the parent-child relationship when parental neglect, abuse, or abandonment are at issue, I do not find that, under the circumstance of the case before me, the State’s interests trump the traditional right of parents to establish a home and raise their children. See E.P. v. Marion Co. Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995).
Even though G.W.’s sister made an initial allegation of sexual abuse, she has since recanted and clarified that she had been angry with Mother for not spending as much time with her. She has denied making the diary entries alluding to sexual intercourse and the DCS has not established any evidence that G.W.’s sister wrote the entries. Rather, DCS has conceded that the diary entries could have been written by anyone. Despite the recantation and lack of evidence, DCS still wants to subject G.W. to an intrusive forensic interview in a strange environment by unknown interviewers merely to clarify some inconsistencies in how her sister originally reported the alleged abuse. Without good cause to believe that G.W. may be at risk for sexual abuse and without statutory grounds to grant DCS’s motion, I find the motion to compel Mother to subject her minor child to a forensic interview to be an impermissible extension of *390 DOS’s authority. I would reverse the trial court’s order.