Cheryl SULLIVAN, in her capacity as Secretary of Indiana Family and Social Services Administration and Indiana Family and Social Services Administration, Appellants (Defendants Below),

v.

Petricia DAY, individually and in behalf of all others similarly situated, Appellees (Plaintiffs Below).

No. 49S02–9612–CV–735.

Supreme Court of Indiana.

June 24, 1997.

Pamela Carter, Attorney General, Jon Laramore, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellants.

Scott R. Severns, Severns Associates, Indianapolis, for appellees.

ON CIVIL PETITION TO TRANSFER

SELBY, Justice.

The central issue in this case is whether an individual whose medical condition will improve with treatment, but who cannot afford to pay for treatment, is disabled for purposes of Medicaid eligibility in Indiana. The Indiana Family and Social Services Administration and its Secretary (together "FSSA") appeal from the trial court's amended order of summary judgment declaring invalid FSSA's method of determining Medicaid eligibility for disabled individuals and enjoining FSSA from following that policy. The Court of Appeals affirmed on a basis different from that relied on by the trial court. *Sullivan v. Day,* 661 N.E.2d 848 (Ind.Ct.App.1996). This Court granted transfer to consider the issue. We now reverse the trial court's judgment and remand for further proceedings.

*I. Historical Background*

As enacted in 1935, the Social Security Act ("SSA") made no specific provision for aid to the disabled. Until 1950, the disabled were cared for by the states and local communities under a general assistance program, which was generally admitted to be inadequate. *See* CHARLES I. SCHOTTLAND, THE SOCIAL SECURITY PROGRAM IN THE UNITED STATES 114 (2d. ed. 1970) (hereinafter "SCHOTTLAND").

Aid to the Permanently and Totally Disabled ("APTD") was added as Title XIV to the SSA in 1950 to provide federal grants-in-aid to approved state programs for the disabled. *See* Social Security Act Amendments of 1950, Pub.L. No. 81–734, § 351, 64 Stat. 477, 555 (1952). APTD provided funds to states for the purpose of "enabling each State to furnish financial assistance, as far as practicable under the conditions in such

State, to needy individuals ... who are permanently and totally disabled...." 42 U.S.C. § 1351 (1970), *repealed by* Social Security Amendments of 1972, Pub.L. No. 92–603, § 303, 86 Stat. 1329, 1484 (1973). Within the federal framework, states developed definitions of qualifying disability. Most state definitions were very strict, requiring a showing of great disability and impairment. SCHOTTLAND at 114–15.

Title XIX of the Social Security Act ("SSA"), popularly called "Medicaid," was enacted by the Social Security Amendments of 1965, Pub.L. No. 89–97. Its purpose is to enable the states "to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitative and other services to help such families and individuals attain or retain capability for independence or self-care...." 42 U.S.C.A. § 1396 (West 1992). States that elect to participate in the program and receive federal funds must make Medicaid available to all persons who are "categorically needy." *See* 42 U.S.C.A. § 1396a(a)(10) (West Supp.1996); 42 C.F.R. § 435.4 (1996); HARVEY L. MCCORMICK, MEDICARE AND MEDICAID CLAIMS AND PROCEDURES § 833 (2d ed. 1986 & Supp.1996) (hereinafter "MCCORMICK").

Whether a person is categorically needy is determined by reference to eligibility for certain other programs. Originally, as a general rule, anyone who was eligible to receive cash benefits under the following four grant-in-aid programs was also eligible for Medicaid: (1) Aid to Families with Dependent Children ("AFDC") under Title IV–A of the SSA, (2) Old Age Assistance under Title I of the SSA, (3) Aid to the Blind under Title X of the SSA, and (4) APTD under Title XIV of the SSA. Effective January 1, 1974, the latter three programs were combined into a new federal program—Supplemental Security Income for the Aged, Blind, and Disabled ("SSI"), Title XVI of the SSA. *See* MCCORMICK at §§ 832–33. From its inception, SSI has defined disability for an adult as the inability "to engage in any substantial gainful activity by reason of any medically determin-

able physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp.1996) (using the same language as was in the original Social Security Amendments of 1972, Pub.L. No. 92–603, § 301, 86 Stat. 1329, 1471 (1973)). Because SSI's disability eligibility was less stringent than eligibility for the predecessor APTD program, Congress was concerned that some states would drop out of the Medicaid program rather than extend coverage to all persons who qualified for SSI. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 38–39, 101 S.Ct. 2633, 2637–38, 69 L.Ed.2d 460 (1981). Therefore, states that did not want to use the broadened SSI definition of disability have been given the option (the "209(b) option") of adopting a more restrictive definition, so long as the definition is not more restrictive than the definition the state used in its Medicaid plan as in effect on January 1, 1972. *See Id.;* 42 U.S.C. § 1396a(f) (West Supp.1996); 42 C.F.R. §§ 435.121 and 435.540(a) (1996); MCCORMICK at § 853. States that have exercised this option, Indiana among them, *see* Ind.Code Ann. § 12–15–1–5 (West 1994), are commonly referred to as "section 209(b) states." Because states had previously been required to provide Medicaid benefits to all persons eligible for APTD, a section 209(b) state's definition of disability may be no more restrictive than its APTD definition in effect on January 1, 1972. *See Indiana Department of Public Welfare v. Payne,* 622 N.E.2d 461, 464 (Ind.1994).

## II. Case Background

The named plaintiff in this class action, Petricia Day, is a 55–year–old former nurse's aid suffering from a severe degenerative condition of her right knee. She was told by her orthopedic specialist that she needed total knee replacement surgery, which she could not afford.

Day applied for assistance under Indiana's Medicaid program. Under the statute in effect at the time, Medicaid would be provided to needy persons who had "a physical or mental impairment, disease, or loss that ... appears reasonably certain to continue

throughout the lifetime of the individual without significant improvement...." Ind. Code Ann. § 12–14–15–1(2) (West 1994) (eligibility for Supplemental Assistance for Persons with Disabilities); Ind.Code Ann. § 12–15–2–3 (West 1994) (persons receiving such assistance are eligible for Medicaid). An administrative law judge ("ALJ") denied Day's application on the basis that her condition was not reasonably certain to continue for the remainder of her lifetime because it was treatable by surgery. FSSA affirmed the ALJ's determination.

Day filed a petition for judicial review combined with a class action complaint against the defendants seeking reversal of FSSA's determination and requesting declaratory and injunctive relief for persons similarly situated. The parties agreed to certification of the following class of plaintiffs:

> All individuals in Indiana who have had or will have applications for benefits under Ind.Code § 12–14–15 denied ... based on the state agency's determination that they are not disabled because their conditions are treatable and therefore ... not 'reasonably certain to continue throughout the lifetime of the individual without significant improvement,' although they are unable to afford the treatment that may lead to improvement of their conditions.

Simplified, the class consists of Medicaid applicants whom FSSA does not consider to be "disabled" because their conditions may improve with treatment, even though they are too poor to pay for treatment. The parties disagree as to the impact on the State if the members of the class qualify for Medicaid. FSSA asserts that the result would be to add 7,500 to 16,000 persons to the Medicaid rolls. The plaintiffs contend that the number would be much smaller, citing figures indicating that perhaps as few as 123 applicants during a period of about three and a half months would have been members of the class.

On cross motions for summary judgment, the trial court determined that under the then current statutes and regulations, a treatable disabling condition is reasonably certain to continue throughout the lifetime of the individual without significant improvement if the individual cannot afford treat-ment. The trial court, therefore, entered findings of fact, conclusions of law, and judgment in favor of the plaintiffs. After the trial court modified the scope of FSSA's obligation to notify class members, FSSA initiated this appeal by filing a timely praecipe. Shortly thereafter, the Indiana legislature added the following to the definition of disability in Ind.Code § 12–14–15–1(2): "The determination of medical disability under this subsection shall be made without reference to the individual's ability to pay for treatment." 1995 Ind. Acts 152 § 4.

On appeal, the Court of Appeals affirmed the trial court's order of summary judgment for the plaintiffs, but on a legal basis different from that relied on by the trial court. The Court of Appeals denied FSSA's petition for rehearing, and this Court granted FSSA's petition to transfer.

### III. Adoption of Part II of Court of Appeals' Opinion

■ The Court of Appeals first held that FSSA's interpretation of the statute was not erroneous. The Court concluded that both the Plaintiffs and FSSA had offered plausible interpretations of Indiana's eligibility statute and regulations in effect before the recent statutory amendment, and that under the circumstances, the trial court had erred in not deferring to FSSA's interpretation, as FSSA was the agency charged with interpreting the statute and regulation in the first instance. *See Sullivan v. Day,* 661 N.E.2d 848, 854 (Ind.Ct.App.1996). We agree, and now expressly adopt by reference the Court of Appeals' analysis of this issue found in Part II of its decision, *id,* at 852–54. *See* Ind. Appellate Rule 11(B)(3).

### IV. Remand for Consideration of Indiana's 1972 Eligibility Requirements

■ Although the Court of Appeals ruled that the trial court had erred in failing to defer to FSSA's interpretation of the then current statutes and regulations, the Court of Appeals *affirmed* the trial court's judgment on a basis not raised by the parties below or on appeal. The Court of Appeals held that FSSA's interpretation of Indiana's Medicaid eligibility requirement (and by implication, the recent statutory amendment) is invalid

under Section 209(b) of the Social Security Act because it is more restrictive than the eligibility requirement in effect on January 1, 1972. We now vacate this part of the Court of Appeals' opinion and remand for further proceedings with respect to this issue.

The current statutory definition of disability was present in nearly identical form in 1972, save for the recent statutory amendment precluding consideration of an individual's ability to pay for treatment. While a non-code section of the amending legislation provided that the amendment was intended to be a clarification of the law and not a substantive change, 1995 Ind. Acts 152 § 24, we do not find this statement dispositive of what a different legislature intended more than 20 years ago.

 The object of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Superior Construction Co. v. Carr,* 564 N.E.2d 281, 284 (Ind.1990). If a statute is susceptible to reasonable and intelligible construction, it is the duty of the court to construe it to give effect and validity to each provision thereof. *Tinder v. Music Operating, Inc.,* 237 Ind. 33, 52, 142 N.E.2d 610, 620 (1957). The statute is examined as a whole, and while the language itself is analyzed, this Court will refrain from overemphasizing a strict literal or selective reading of individual words. *See Clifft v. Indiana Department of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995).

The Court of Appeals set forth in detail the statutory provisions in effect on January 1, 1972, focusing on a particular phrase in one section of the statutory scheme—i.e. that assistance could be "denied or discontinued" to any disabled person who refused treatment. *See* Ind.Code § 12–1–7–44 (1971). The court then, *sua sponte* and without the benefit of any briefing by the parties or any record on the issue, concluded on the basis of this phrase that applicants whose disabilities were treatable from the outset, as well as recipients whose disabilities became treatable at some later point, must have been eligible for Indiana's version of APTD, and thus for Medicaid in 1972. *Sullivan,* 661 N.E.2d at 854–60. While this conclusion logically flows from the inferences drawn from the use of the words "denied" and "discontinued," we cannot say that the statutory scheme as a whole compels this as the only conclusion.

The parties had no opportunity to submit evidence to the trial court as to the rules and regulations in effect in 1972 or the actual practice of FSSA's predecessor agency in 1972 in assessing the permanence of a disability.[1] The parties have had only a limited opportunity to brief the issue after FSSA's petition for rehearing before the Court of Appeals. This Court therefore remands this case to the trial court for further consideration of Indiana's 1972 statutory and regulatory scheme and FSSA's predecessor agency's interpretation and application of the 1972 statutes and regulations.

### V. Conclusion

This Court agrees with the Court of Appeals' analysis and conclusion found in Part II of its decision, *Sullivan v. Day,* 661 N.E.2d at 852–54, and pursuant to Indiana Appellate Rule 11(B)(3), we adopt and incorporate by reference that portion of the Court of Appeals' opinion.

The remaining issue in this case is whether the exclusion of persons with treatable disabilities from Medicaid eligibility is impermissibly more restrictive than the eligibility requirements for Indiana's version of APTD in effect on January 1, 1972. This issue may be resolved only after the parties are given an opportunity to develop the record and fully brief the issue.

The Court therefore vacates the remainder of the Court of Appeals' opinion, reverses the judgment of the trial court, and remands for further proceedings consistent with this opinion.

SHEPARD C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J. not participating.

---

1. After the legislature amended the statutory definition of disability, the Court of Appeals ordered this appeal to continue without further proceed- ings in the trial court. The parties therefore had no opportunity to present evidence on the issue of the agency's practices on January 1, 1972.