**INDIANA STATE UNIVERSITY, Appellant–Respondent,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and William A. Lafief, Appellees–Claimants.**

No. 93A02–0611–EX–1012.

Court of Appeals of Indiana.

June 22, 2007.

---

John R. Maley, Kristin Shedlock, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Indiana State University (ISU) appeals the decision of the Review Board of the Department of Workforce Development (Review Board), which determined that appellee-claimant William C. LaFief was entitled to unemployment benefits. Specifically, ISU claims that the Review Board erroneously concluded that LaFief had been discharged from his position at the university and was, therefore,

eligible for benefits. Concluding that the Review Board erred in determining that LaFief was eligible for unemployment benefits because he had not been discharged from his employment at ISU, we reverse.

## FACTS

On May 7, 2004, ISU offered LaFief a tenure-track appointment to the faculty. The appointment was for an Assistant Professor of Marketing position in the Organizational Department in the College of Business, effective August 18, 2004. LaFief accepted the offer on May 16, 2004, and was granted two years of credit towards tenure in light of his previous teaching experience.

C. Jack Maynard, the interim Provost and Vice President for Academic Affairs at ISU, wrote LaFief a letter of appointment, which provided that "tenure at Indiana State University is a status earned through service to this institution and eligibility exists in accordance with ISU policy as amended from time to time by the ISU Board of Trustees." Appellant's App. p. 20.

Additional facts found by the Review Board are as follows:

ISU considers non-tenured professors to be on probationary status with a series of reappointments until the individual achieves tenure (Appellant's App. 22, 24). "Initial appointments of employment are made at the rank of assistant professor/librarian, associate professor/librarian, or professor librarian. These ranks are for full-time faculty beginning a probationary period leading to eligibility for tenure" (Appellant's App. 24; Employer's Ex. 1, p. III–3). Only after tenure is reached does an individual have continuing employment. "Regular faculty members become eligible for continuous appointment (award of tenure) after satisfactorily completing a probationary period with annual reviews

and six (6) years of full-time service in accredited institutions ..."

Individuals seeking tenure undergo yearly reviews to determine if they are meeting the Employer's standards. "The performance of faculty members on renewable term appointments ... shall be regularly evaluated with established criteria and performance standards appropriate to their positions" (Appellant's App. 24; Employer's Ex. 1, p. III–1). It is the Employer's responsibility to "maintain consistent evaluative criteria and performance standards for the assignment of academic rank and awards of tenure" (Appellant's App. 22; Employer's Ex. 1, p. III–1). While the Employer expects its entire faculty to "demonstrate satisfactory performance" in the areas of teaching, research, and service, "specific performance goals shall be established during the annual reviews of probationary faculty" (Appellant's App. 24; Employer's Ex. 1, p. III–3). The goals or areas of improvement established during a faculty member's annual review "form the foundation for evaluations for tenure in terms of criteria and performance standards established by the faculty member's academic unit" (Appellant's App. 24; Employer's Ex. 1, p. III–3). More importantly, "annual probationary reviews result in recommendation for reappointment, or non-reappointment" (Appellant's App. 25; Employer's Ex. 1, p. III–4). "Faculty members who, during their probationary periods, do not demonstrate continuing achievement in the interrelated activities of teaching or librarianship; research, scholarship, or creativity; and service are to be conditionally reappointed or terminated" (Appellant's App. 22; Employer's Ex. 1, p. III–1).

Appellant's App. p. 14–15.

On February 23, 2005, ISU reappointed LaFief as a faculty member for the 2005–

06 academic year. In the reappointment notice, ISU commended LaFief for his teaching effectiveness and contributions in the areas of scholarly research and publication, but the report also stated that LaFief needed to "give immediate attention to referenced journal publications." *Id.* at 28.

On December 12, 2005, ISU notified LaFief that it was not going to reappoint him after the 2005–06 academic year. ISU based the non-reappointment on significant concerns from LaFief's colleagues, chairperson, dean, and provost regarding his teaching effectiveness and research productivity. In accordance with ISU policy, LaFief was notified of his right to appeal the decision internally on the basis of: (a) inadequate consideration of the submitted materials bearing on the relevant performance of the candidate; (b) inadequate consideration given to the department's recommendation; or (c) violations of academic freedom. LaFief appealed ISU's decision not to reappoint him. On February 10, 2006, ISU denied LaFief's appeal. LaFief abandoned his appeal efforts, completed the school term, and concluded his employment with ISU on May 6, 2006, pursuant to the terms of his contract.

Thereafter, LaFief requested unemployment benefits, and a Deputy from the Indiana Workforce Development issued a Determination of Eligibility, concluding that ISU had not discharged LaFief for just cause. Thus, the Deputy determined that LaFief was eligible for unemployment benefits. ISU appealed, and an Administrative Law Judge (ALJ) conducted a hearing on the claim. The ALJ found that LaFief was not discharged from ISU, observing that LaFief had been employed under a probationary period and that his contract was evaluated annually by ISU.

The ALJ also noted that ISU made an annual recommendation and decision to renew or discontinue LaFief's employment. The ALJ observed that ISU decided not to renew LaFief's contract for the 2006–07 academic year and his employment had simply ended. Appellant's App. p. 7. Thus, the ALJ concluded that LaFief was not entitled to unemployment benefits.

On October 18, 2006, the Review Board reversed the ALJ's decision, determining that because ISU had not recommended LaFief's reappointment, it had "effectively discharged the Claimant." Thus, it concluded that LaFief was eligible for unemployment benefits. Id. ISU now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

In addressing ISU's contention that the Review Board erred in granting LaFief's request for unemployment benefits, we note that when reviewing a decision of the Review Board, we determine whether that ruling is reasonable in light of its findings. *Penny v. Review Bd.,* 852 N.E.2d 954, 957 (Ind.Ct.App.2006), *trans. denied.* The Review Board's findings of fact are generally conclusive and binding on us, but when an appeal involves a question of law, we are not bound by the Review Board's interpretation of the law. Rather, we determine whether the Review Board correctly interpreted the law and correctly applied the applicable law. *Id.*

The parties appear to agree that this appeal involves the interpretation of the terms of the contract regarding LaFief's reappointment at ISU and the interpretation of the Indiana Unemployment Compensation Act [1] (the Act). Because we are resolving a question of law, our review in this case is de novo. *Id.*

---

1.  Ind.Code § 22–4–1–1 *et seq.*

## II.  ISU's Contentions

ISU argues that the Review Board erred in determining that LaFief was eligible to receive unemployment benefits because the evidence established that LaFief was not "discharged" within the meaning of the Act. Appellant's Br. p. 7–8.  Thus, because LaFief voluntarily agreed to a probationary one-year appointment pursuant to the contract, ISU maintains that LaFief was not eligible for unemployment benefits merely because it decided not to renew his contract.

■ Notwithstanding LaFief's contention that he was eligible for benefits because he was "unemployed through no fault of his own," appellees' br. p. 6, we note that qualification for unemployment benefits under the Act is conditioned, in part, on the issue of whether or not a claimant was "discharged" within the meaning of the statute.  Specifically, Indiana Code section 22–4–15–1 provides that "an individual who was discharged for just cause is ineligible [for benefits]." While the statute does not specifically define the term "discharge," the general rule is that undefined words in a statute are given their plain, ordinary, and usual meaning.  Ind.Code § 1–1–4–1(1).  Courts may also consult English language dictionaries to ascertain the plain and ordinary meaning of statutory terms.  *Walling v. Appel Serv. Co.*, 641 N.E.2d 647, 649 (Ind. Ct.App.1994).

We note that Black's Law Dictionary defines "discharge" as "the firing of an employee."  Black's Law Dictionary 475 (7th ed.1999).  Here, there is no evidence supporting a conclusion that LaFief was fired.  To the contrary, it is undisputed that LaFief was employed pursuant to the terms of a one-year, probationary appointment that was not renewed for the 2006–07 academic year.  Pursuant to ISU's policy, assistant professors are eligible for continuing employment only after achieving tenure.  Until such time, assistant professors are employed pursuant to one-year probationary appointments that are reviewed annually, resulting in a recommendation for reappointment, conditional reappointment, or non-reappointment.  Appellant's App. p. 25.  Moreover, ISU provides a separate mechanism for termination.  *Id.* at 22.

■ Although we have found no reported Indiana case discussing the issue of whether a non-tenured university professor is "discharged" within the meaning of the Act when he or she is not reappointed at the expiration of a probationary one-year appointment, decisions from other jurisdictions may be instructive.  *Assoc. Truck Lines, Inc. v. Pub. Serv. Comm'n of Ind.*, 492 N.E.2d 704, 713 (Ind.Ct.App. 1986).  In *Mayberry v. Dees*, 663 F.2d 502, 515 (4th Cir.1981), *cert. denied,* 459 U.S. 830, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982), a distinction was made between non-reappointment or "non-renewal" of a probationary appointment and discharge or "dismissal" under the university tenure concept:

It is a fact of basic importance that non-renewal, following the running of the established probationary period, is not a dismissal, and is altogether lacking in invidious connotations . . . .  Unfortunately, these two terms are too frequently used as synonyms . . . reference is often made to those whose probationary contracts are not renewed as having been "dismissed."  . . . Dismissal, whether during a term or a tenured appointment is grave action, which should be undertaken only for cause, with full procedural safeguards, and with the burden of proof resting on the institution to demonstrate before proper tribunals that dismissal is warranted.  But the decision not to reappoint or not to grant tenure

is not a form of dismissal. *Non-reappointment is a regular and indispensable feature of any tenure system that includes a selection process resting on probationary service.*

(Emphasis added). In essence, *Mayberry* determined that non-reappointment does not equate to a discharge under the university tenure concept. And we agree with that pronouncement.

As noted above, LaFief voluntarily agreed to a probationary one-year appointment with ISU. Appellant's App. p. 20. The one-year appointment expired by its own terms and was not renewed by ISU. Moreover, when LaFief accepted the position, he knew that each year, ISU would have the option of not reappointing him. *Id.* Hence, the evidence establishes that LaFief had no expectation of continuing employment beyond the expiration of the one-year term. As a result, LaFief's unemployment at the expiration of the appointment establishes that he was not entitled to benefits. In other words, the Review Board erred in concluding that ISU had "effectively discharged" LaFief from employment. *Id.* at 14–15. *See Pope v. Wabash Valley Human Servs., Inc.,* 500 N.E.2d 209, 212 (Ind.Ct.App.1986) (observing that where an employee voluntarily agrees to an employment contract that provides for prospective unemployment and he subsequently becomes unemployed, that unemployment is voluntary and he is, therefore, ineligible for benefits under the Act).

The judgment of the Review Board is reversed.

FRIEDLANDER, J., and CRONE, J., concur.