**SOUTH BEND COMMUNITY SCHOOL CORPORATION,**
Appellant–Employer,

v.

**Mary A. SWARTZ, Appellee–Claimant.**

**No. 93A02–0708–EX–657.**

Court of Appeals of Indiana.

March 10, 2008.

Alison G. Fox, Amy M. Steketee, Baker & Daniels LLP, South Bend, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

The issue presented in this appeal is virtually identical to that decided recently in *South Bend Community School Corporation v. Lucas,* 881 N.E.2d 30 (Ind.Ct. App.2008) (*South Bend I*), with the only difference being the identity of the appellee-employee. Here, appellant-employer South Bend Community School Corporation (South Bend) appeals the decision of the Unemployment Insurance Review Board (the Board) awarding unemployment insurance benefits to appellee-claimant Mary A. Swartz. South Bend argues that the Board erroneously determined that the Head Start Consortium of Elkhart and St. Joseph Counties (Head Start) is not an educational institution within the meaning of the relevant statute such that Swartz, a teaching assistant for Head Start, is eligible for unemployment insurance during the summer breaks between Head Start's academic terms.

We explained the legislation underlying this dispute in *South Bend I*:

The purpose of the Unemployment Act is to provide unemployment benefits to persons unemployed through no fault of their own. Ind.Code § 22–4–1–1. The legislature has statutorily excluded employees of educational institutions from receiving unemployment benefits for periods of unemployment between academic terms by preventing them from drawing against wage credits earned from the educational institution. I.C. § 22–4–14–7(a)(1). The statute does not, however, define "educational institution." Other sections of the Article define "postsecondary educational institutions," I.C. § 22–4–2–31, and "school," I.C. § 22–4–2–37, as educational institutions. The Board, therefore, concluded that "educational institution" refers only to the two terms defined elsewhere as educational institutions—schools and institutions of higher education.

*Id.* at 32–33 (footnote omitted). We then examined the specifics of the Head Start program, ultimately concluding that the legislature intended that the program be treated as an educational institution:

... Head Start is a consortium of twelve undisputedly educational institutions. It operates in educational institutions and its academic calendar is identical to that of the schools responsible for its operation. It has a structured curriculum that is taught by teachers. Before the scheduled summer breaks, Head Start gives its teachers reasonable assurance that they will return to their jobs when the new academic year begins in the fall. And perhaps most compelling, although Head Start teachers do not receive a salary during the summer breaks, their health insurance coverage *does* continue unabated through those months. Inasmuch as Head Start is virtually identical to a school and is inextricably intertwined with the member public school corporations, we can only conclude that

the legislature intended that Head Start be treated as an educational institution for the purpose of unemployment compensation.

*Id.* at 34–35 (emphasis in original). Adding further support to our conclusion were the following facts:

Head Start teachers work on an academic calendar. Summer breaks between terms are scheduled well in advance and allow teachers to plan other activities, including alternate employment, for that time. When Lucas applied for unemployment benefits in the summer of 2006, she knew that she would return to work in August. There is no evidence that she was involuntarily underemployed by adverse business conditions.

*Id.*

Here, likewise, we reach the same conclusion based on the same facts. Inasmuch as the legislature intended that Head Start be treated as an educational institution for the purpose of unemployment compensation, the Board's decision in favor of Swartz was contrary to legislative intent and necessarily unreasonable.

The judgment of the Board is reversed.

DARDEN, J., and BRADFORD, J., concur.