Cynthia A. SOAMES, Appellant–Petitioner,

v.

**INDIANA DEPARTMENT OF NATURAL RESOURCES and Thomas A. Young/Young Oil Company, Appellees–Respondents.**

No. 49A05–0912–CV–726.

Court of Appeals of Indiana.

Aug. 6, 2010.

Publication Ordered Sept. 23, 2010.

Transfer Denied Dec. 9, 2010.

Mark Small, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

---

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Cynthia Soames appeals the trial court's denial of her verified petition for judicial review of the Natural Resource Commission's ("NRC") final order requiring Soames to refrain from interfering with Thomas Young/Young Oil Company's ("Young") efforts to plug three oil wells on Soames' property. Soames presents a single issue for our review, namely, whether the NRC abused its discretion when it ordered that the oil wells on her property be plugged.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1997, Soames and Young entered into a lease agreement whereby Young operated three oil wells located on property in Miami County owned by Soames. Accordingly, Young obtained permits from the Indiana Department of Natural Resources ("DNR") to operate the wells. In 1998, Soames filed a complaint against Young alleging breach of contract. That litigation spanned approximately eleven years. And, in 2005, Young stopped oil production on Soames' property when the lease agreement was terminated by court order.

On August 16, 2007, DNR issued notices of violation ("NOVs") to Young alleging that each of the three wells it operated on Soames' property were in noncompliance with "312 IAC 16–1 et seq. or IC 14–37 et seq." Appellant's App. at 426. The NOVs instructed Young to take the following "corrective action" by October 16, 2007:

> Operate, or plug and abandon, or obtain a temporary abandonment permit for [each] well per 312 IAC 16–5–20. NOTE: A pressure test is required prior to obtaining a temporary abandonment permit.

> Post well and lease identification showing the Permit Number, Lease Name, Section, Township and Range per 312 IAC 16–5–10. NOTE: This identification must be readable from 20 feet.

> Remove all vegetation and inflammable materials from all well operations and facilities as per 312 IAC 16–5–11.

*Id.*

On September 10, 2007, Young petitioned for administrative review of the NOVs alleging that Young was unable to

"address all the ordered actions due to ongoing litigations [sic] of the Oil and Gas Lease in Miami County, actions taken by the landowner and questions about the permit and violation notices." *Id.* at 424. After Soames was added as a third party respondent, an administrative law judge ("ALJ") held a hearing on Young's petition on October 29, 2008. Following that hearing, the ALJ issued its "Nonfinal Order" with findings and conclusions in relevant part:

20. Young Oil has offered to cap or plug the subject wells, which are the subject of the NOVs, as per DNR rules. Soames has refused Young Oil permission to come upon her real estate in order to cap those wells with threat of arrest.

### D. Fire Hazard Prevention

21. "Regulation of the oil and gas industry has been justified on the theory that many phases of it are affected with a public interest." 8 Am.Jur.2d, Gas and Oil § 74 (1999). Enactments for the conservation of oil and gas are public in nature, and the state regulatory agency has the authority and responsibility to protect the public interest in orderly development and production of resources. *Harding & Shelton, Inc. v. Sundown Energy, Inc.*, 130 P.3d 776 (Okla.2006). In construing an early statute directed to the oil and gas industry, the Indiana Supreme Court observed its main object was public safety, rather than the prevention of waste. *Given v. State*, 160 Ind. 552, 66 N.E. 750 (1903).

22. Essential to these public interests, and particularly to public safety, is the need to avert fires and explosions. Fire prevention is well established as a primary purpose for the regulation of oil and gas production in Indiana. *Jamie-son v. Indiana Natural Gas and Oil Co.*, 128 Ind. 555, 28 N.E. 76 (1891).

23. Fire prevention is specifically addressed today in Indiana at 312 IAC 16–5–11. This rule section provides:

Sec. 11. (a) To prevent fire hazards, all waste oil, cut oil, bottom sediments, and tank bottoms shall be collected in burn off pits located a safe distance from any oil well, oil storage tank, building, or other structure and shall be burned as necessary to prevent overflowing. Before any burn off pit is constructed, the owner or operator shall file an application with the division on a division form. Waste oil in tank bottoms shall be conveyed from storage tanks to pits in such a manner as to not create a fire hazard. Pits shall be constructed to prevent the escape of oil and of sufficient height to prevent surface water from entering the pit. No pits shall be constructed where the soil is porous and closely underlaid by either gravel or sand strata. These pits shall not be used to collect production brine. The burn off pits and their walls shall be kept free of vegetation.

(b) All lease and storage tanks shall be surrounded by an impermeable dike that has a capacity of one and one-half (1 1/2) times that of the tank or tanks it surrounds. The dike and the area within the dike shall be maintained free from vegetation, fluids, and inflammable materials. The dike shall not be breached.

(c) All well, tank, oil heating or treating installation, and booster pump locations shall be kept free from vegetation and inflammable material.

(d) All gas produced in the operation of oil wells that is not utilized shall not be burned closer than what is a rea-

sonable safe distance from a well, storage tank, or building.

\* \* \*

29. ... Nothing in the evidence supports a finding that any person has since 2006 cut the weeds surrounding the subject wells or from their firewalls. There is no basis for determining the site conditions have improved in the more than two years since the notices of noncompliance were directed to Young Oil. A reasonable inference is that they may have deteriorated.

30. The continued existence of uncut weeds at each of the subject wells poses a direct fire hazard and additionally jeopardizes the integrity of the firewalls. These are at the core of concerns which Indiana oil and gas laws, enacted beginning in the 19th century, were intended to address. Uncut weeds near a well or on a firewall continue to be major concerns under current laws. The continued existence of uncut weeds at the subject wells forms an ample and proper basis for the issuance of each of the NOVs.

31. As stated in *Jarvis Drilling v. Midwest Oil Producing,* 626 N.E.2d 821, 827 (Ind.Ct.App.1993), *trans. denied:*

> In Indiana, an owner or operator of a well has the duty to plug an abandoned well in compliance with DNR regulations when the conditions of IC 13–8–10–1 are present. Transfer [of a DNR permit] to a third person does not extinguish that obligation.

32. IC 13–8–10–1 was recodified as IC 14–37–8–1 in 1995. P.L.1–1995, SEC. 30. As stated in pertinent part in subsection (a), this section now provides:

> Sec. 1. (a) An owner or operator shall plug and abandon a well that:
> (1) is completed as a nonproductive well;

(2) ceases to produce oil or natural gas; or

(3) is no longer operated for the purpose for which the well is permitted; unless the owner or operator is authorized to delay the plugging and abandonment of the well under IC 14–37–8–8.

\* \* \*

36. None of the subject wells are producing oil or natural gas under IC 14–37–8–1(a)(2). None of the subject wells are being operated for the purpose for which they were permitted under IC 14–37–8–1(a)(3). Subsection (a)(2) and subsection (a)(3), each, standing alone, form a legal basis upon which the owner or operator could be required to plug and abandon the wells "unless the owner or operator is authorized to delay the plugging and abandonment."

37. The corrective action demanded by the DNR for each of the subject wells was for Young Oil to operate, to plug and abandon, or to obtain a temporary abandonment permit. Because its lease had been terminated and Young Oil had ceased to be an owner as referenced in Finding 34, Young Oil was prospectively precluded from either operating the subject wells or seeking their temporary abandonment. As an operator, however, Young Oil has a statutory duty to properly plug and abandon the subject wells.

38. Because Soames had resumed her status as owner of the subject wells, she could have applied for permits to operate the subject wells for oil and gas purposes in accordance with IC 14–37 and 312 IAC 16. Securing permits would have provided her with the opportunity for their operation or, upon compliance with 312 IAC 16–5–20, for their placement in temporary abandonment.... In any event, Soames has not applied to permit the subject wells nor

has she caused the testing requisite for their temporary abandonment. As an owner, Soames has a statutory duty to properly plug and abandon the subject wells.

\* \* \*

43. Soames has refused entry to Young Oil to the sites of the subject wells and has additionally sought to limit Young Oil's agents to the performance of temporary abandonment rather than plugging and abandonment. Soames has no legal authority to preclude the DNR or the Commission from exercise of the police powers against Young Oil as reasonably required to achieve conformance with IC 14–37 and 312 IAC 16. Soames must not interfere with the performance by Young Oil of proper plugging and abandonment of the subject wells.

44. If Soames persists in interfering with reasonable efforts by Young Oil to perform plugging and abandonment of the subject wells, the DNR may initiate action to require Soames to perform plugging and abandonment at her own expenses and for the assessment of civil penalties against her under IC 14–37–13–3.

*Id.* at 217–22.

Young appealed the ALJ's order for review to the NRC. During a prehearing conference, Young stated that he did "not dispute the need to properly plug and abandon the wells but stated he has been prevented from doing so" by Soames. *Id.* at 418. Following a hearing, the NRC issued its final order, adopting the ALJ's findings and conclusions, on April 9, 2009. And a few days later, the NRC issued three minor modifications to its findings and conclusions, including the following sentence added to Finding 43: "Soames may, at her own expense, select an Indiana licensed professional geologist (or another qualified professional approved by the

DNR) to observe and record the plugging and abandonment of the subject wells." *Id.* at 181. Soames petitioned for judicial review of the final order, which the trial court denied after a hearing. This appeal ensued.

## DISCUSSION AND DECISION

Our Supreme Court set out the applicable standard of review in *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000):

> While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act ["AOPA"], this power of judicial review is limited. A court may only set aside agency action that is:
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial evidence.

*See* Ind.Code § 4–21.5–5–14(d).

> While an appellate court grants deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law. *An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.*

(Citations omitted, emphasis added.)

■■ Here, Soames contends that the NRC abused its discretion when it ordered

that the three wells be plugged. In particular, she maintains that the evidence does not support the NRC's conclusions that the wells should be plugged pursuant to Indiana Code Section 14–37–8–1(a)(2) or (3). Again, that statute provides in relevant part:

(a) An owner or operator shall plug and abandon a well that:

(1) is completed as a nonproductive well;

(2) ceases to produce oil or natural gas; or

(3) is no longer operated for the purpose for which the well is permitted;

unless the owner or operator is authorized to delay the plugging and abandonment of the well under section 8 of this chapter.

I.C. § 14–37–8–1. Because that statute is written in the disjunctive, we need only determine whether the evidence supports the NRC's conclusion with respect to one of the statute's subsections.

Soames asserts that

[t]here is no guidance, either in the statutes or in the administrative code, as to the meaning of I.C. § 14–37–8–1(a)(3). The meaning given by the IDNR to the section seems to be that, since none of the three wells currently is producing oil, then they are not being operated for the purpose for which they were permitted. However, this interpretation renders the last nine words of the section meaningless. If the legislature had intended to mandate capping, it need only have enacted "is no longer operated." Instead, a distinction was drawn as to the well being operated for a different purpose.

Brief of Appellant at 15. But we agree with the NRC that "the meaning of this [sub]section of the statute is clear." Brief of Appellee at 12. Here, Young obtained permits to operate the three wells. The undisputed evidence shows that Young has not operated any of the three wells for the purposes for which they were each permitted since at least 2005. Accordingly, the wells are no longer operated for the purposes for which they were permitted.

■ Again, the interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. *LTV Steel Co.*, 730 N.E.2d at 1257. And the agency is entitled to that deference even where a party offers a differing, plausible interpretation of the statute. *See Sullivan v. Day*, 661 N.E.2d 848, 854 (Ind.Ct.App.1996), *adopted in relevant part* 681 N.E.2d 713, 716 (Ind.1997). Here, we conclude that the NRC's interpretation of Indiana Code Section 14–37–8–1(a)(3) is not erroneous and supports its conclusion that the three wells on Soames' property are no longer operated for the purpose for which they were permitted. Accordingly, the NRC's findings and conclusions are supported by substantial evidence and Soames cannot prevail on her claim that the NRC abused its discretion when it ordered that the three wells be plugged.

■ Finally, to the extent that Soames contends that the NRC should have ordered the temporary abandonment of the three wells instead of permanent abandonment, she cannot prevail. As the NRC correctly concluded, Soames was authorized by 312 IAC 16–5–20 to place the wells in temporary abandonment but inexplicably failed to take the measures necessary to comply with that provision. Thus, Soames cannot show that the NRC abused its discretion when it ordered the three wells permanently plugged.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

## ORDER

Appellee Indiana Department of Natural Resources, by counsel, has filed a Motion to Publish.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee Indiana Department of Natural Resources' Motion to Publish is GRANTED, and this Court's opinion handed down on August 6, 2010, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

NAJAM, VAIDIK, BROWN, JJ., concur.